UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

BERNARD HARDRICK,

         Plaintiff,                        Case No. 2:20-cv-257

v.                                             Honorable Janet T. Neff

THOMAS MOHRMAN et al.,

         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC, MDOC

Hearings Officer Thomas Mohrman, MDOC Hearings Administrator Richard D. Russell, and MBP Hearings Investigator P. Basal.

Plaintiff was housed at Chippewa Correctional Facility (URF) before he was transferred to MBP in September 2020. Plaintiff alleges that late in the evening on September 13, 2020, a riot broke out on the Neebish Unit of URF, and the riot continued until approximately 3:00 AM on September 14, 2020. Plaintiff asserts that he watched some of the riot's events from above because he had a birds-eye view from upstairs on B-Wing where he was housed, but he alleges that he was not otherwise involved. He further states that he secured himself in his cell, where he was found by staff when prison security regained control after the riot. Subsequently, Plaintiff, with many other prisoners from Neebish Unit, was transferred from URF to MBP on September 14, 2020.

During the evening of Plaintiff's first day at MBP, prison staff reviewed him on a misconduct charge of "incite to riot/destruction or misuse of state property" for his alleged role in the previous evening's riot. (Compl., ECF No. 1, PageID.4.) Plaintiff requested a hearing investigator, and Defendant Basal was assigned. Plaintiff prepared a three-page statement for Defendant Basal that firmly denied the accusations of misconduct, asserted that the charges were vague, and further challenged prison officials to find him in any security camera footage related to the riot. Plaintiff also requested specific witnesses for his hearing including the corrections officer who had accused him of misconduct but was not present during the riot, the corrections officers who were present at the start of the riot, and the 39 other prisoners accused of involvement in the riot. Defendant Basal allegedly refused to collect witness statements maintaining that he was not the real hearing investigator; he was only filling in.

2

At his hearing on September 21, 2020, Plaintiff pleaded not guilty. He denied being at the scene of the riot, and alleges that neither he nor Defendant Mohrman could find Plaintiff in a video frame that purported to place him at the scene. Defendant Mohrman allegedly rejected Plaintiff's request for witnesses but said that he would review video after the hearing. On September 23, 2020, Defendant Mohrman found Plaintiff guilty of the incitement charge but dismissed the destruction/misuse of property charge. Defendant Morhman imposed a sanction of 30-days' loss-of-privileges, and Plaintiff was reclassified to administrative segregation soon thereafter. On October 6, 2020, while Plaintiff was classified to administrative segregation, he requested a rehearing asserting that the original hearing violated his due process rights.

Two days before Plaintiff requested a rehearing on the incitement charge, he was again reported for misconduct. On October 4, 2020, a medical emergency involving one of the prisoners apparently drew the attention of several other prisoners in administrative segregation. A corrections officer arrived several minutes later. Presumably because the corrections officer did not arrive with urgency, an unknown prisoner admonished the corrections officer's slow response while also calling the officer a derogatory name. Plaintiff alleges that he watched some of the events unfold through the bars in his prison door while lying on his bunk. At some point, as the corrections officer walked by Plaintiff's cell, the corrections officer said, "I got your bitch!" (*Id.*, PageID.7.)

Shortly afterward, a sergeant arrived at Plaintiff's cell and reviewed him for a Class I misconduct charge of assault and battery against prison staff. The corrections officer who had responded to the medical emergency claimed that Plaintiff had thrown an unknown liquid, which hit the corrections officer in the face, shoulder, and chest.

On October 6, 2020, the same day Plaintiff requested a rehearing for his first misconduct charge, Plaintiff met with hearing investigator Moyle (non-defendant) to prepare for the hearing for his second misconduct charge. Plaintiff provided her a two-page statement describing what he could of the events. Plaintiff acknowledged that another prisoner had called the corrections officer a derogatory name, that it was not Plaintiff who said it, and that Plaintiff had not thrown anything at the corrections officer. Plaintiff requested that video of the area be reviewed.

On October 13, 2020, Defendant Mohrman conducted Plaintiff's second misconduct hearing, this time for assault and battery against prison staff. Defendant Mohrman purported to have a photo showing the corrections officer's shirt stained with fluid. Plaintiff alleges, however, that Defendant Mohrman never confirmed whether the photo showed stains. Defendant Mohrman also allegedly presumed that Plaintiff could not have been able to see the events while lying down on his bunk as Plaintiff reported, and therefore concluded that Plaintiff must have been guilty.

Approximately two weeks later, Plaintiff received Defendant Mohrman's decision, which found Plaintiff guilty. Plaintiff alleges that Defendant Mohrman's statements were "distorted and conclusory" and that the evidence did not support the findings. (*Id.*, PageID.9.) Upon finding Plaintiff guilty, Defendant Morhman imposed a sanction of punitive segregation for 10 days and loss of privileges for 30 days. Plaintiff alleges that he is further classified to administrative segregation indefinitely by the Security Classification Committee (SCC) because he has been found guilty of assaulting a staff member. On October 29, 2020, Plaintiff requested a rehearing on his assault-and-battery-of-staff charge.

Plaintiff further asserts that he has not received a response from Defendant Russell, MDOC's hearing administrator, on either request for rehearing. Plaintiff points to MDOC Policy Directive 03.03.105, which states that, "[g]enerally, a Request for Rehearing will be decided within 30 calendar days after receipt of a properly completed Request for Rehearing form." MDOC Policy Directive 03.03.105 ¶ TTT. Plaintiff alleges, however, that at the time he filed his complaint, he had yet to receive a response. At that point, more than 75 days had passed since his earlier request for rehearing, and more than 60 days had passed since his latter request.

Plaintiff alleges that Defendants violated his due process rights provided under the Fourteenth Amendment. For relief, Plaintiff seeks declaratory and injunctive relief as well as compensatory, punitive, and nominal damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.  MDOC

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962

(6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff fails to state a claim against the MDOC.

## IV. Mohrman

Plaintiff alleges that Defendant Mohrman violated his Fourteenth Amendment Due Process rights because Morhman found him guilty of two Class I misconduct charges without sufficient evidence. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's action against Defendant Mohrman fails because Mohrman is absolutely immune from suit for damages under the circumstances of this case.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is

7

barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Therefore, Plaintiff fails to state a claim against Defendant Mohrman.

## V. Russell and Basal

Plaintiff alleges that Defendant Basal failed to investigage. Plaintiff also alleges that Defendant Russell has thus far failed to correct errors on appeal and further failed to comply with MDOC policies.

To the extent Plaintiff contends Defendant Russell's failure to comply with MDOC policies violated his due process rights, his claim fails. Defendant Russell's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, Plaintiff cannot maintain a claim against Defendant Russell for failure to comply with MDOC policy.

Moreover, to the extent that Plaintiff alleges due process violations for failure to investigate or failure to correct errors on appeal, his claims also fail. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has

been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply

9

a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." At the time Plaintiff signed his complaint, he had been classified to administrative segregation for no longer than 87 days[1] and a further loss of privileges for 60 days had been imposed on him. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812-13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only

---

[1] Plaintiff signed the complaint on December 21, 2020. According to documents Plaintiff attached to his complaint, the SCC classified Plaintiff to administrative segregation on September 25, 2020 (ECF No. 1-1, PageID.20), but it is unclear when that classification took effect.

periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Although Plaintiff's confinement in segregation for 87 days exceeds the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant, the restrictions imposed on Plaintiff were far less significant than the lengthy periods of segregation in *Mackey* and *Jones*, which did not implicate a liberty interest. Thus, Plaintiff's confinement in segregation did not trigger a right to due process.

The same is true for the loss of privileges, which are also expected consequences of confinement in segregation. If Plaintiff's confinement in segregation does not implicate a protected liberty interest, it follows that the loss of privileges stemming from that confinement do not implicate such an interest. Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a

11

constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Consequently, Plaintiff's loss of privileges did not trigger a right to due process.

Moreover, regular reviews of Plaintiff's classification ensure that he receives due process protections. *See* MDOC Policy Directive 04.05.120 ¶ FFF (directing that the SCC must review a prisoner's classification to administrative segregation at least as often as every 30 days). Plaintiff acknowledges that the SCC continues to review his classification. (*See* Compl., ECF No. 1, PageID.10.) Although Plaintiff alleges that he is "now subjected to an 'indefin[i]te' stay in administrative segregation" because the SCC will "hold[] the . . . ticket over plaintiff's head as their reason" (*id.*), he has offered nothing to support this assertion. His allegation as to the indefinite classification to administrative segregation is conclusory and thus fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff fails to state a due process claim against Defendants Russell and Basal.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in

good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   January 22, 2021                      /s/ Janet T. Neff
                                                                            Janet T. Neff
                                                                           United States District Judge